# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

IMELDA CARDENAS, an individual,

               Plaintiff,

    v.

WAL-MART STORES, INC., a Delaware
Corporation d.b.a. Wood Village Wal-Mart
Supercenter Store #2927,

               Defendant.

Case No. 3:13-cv-01725-ST

**OPINION AND ORDER**

**STEWART, Magistrate Judge:**

## INTRODUCTION

Plaintiff, Imelda Cardenas ("Cardenas"), filed a Complaint in the Multnomah County Circuit Court alleging one claim for negligence against defendant, Wal-Mart Stores, Inc. ("Wal-Mart"), arising from injuries that she suffered on August 29, 2011, when she slipped and fell in the Wood Village Wal-Mart Supercenter Store #2927. Pursuant to 28 USC § 1441(a), Wal-Mart timely removed the case to this court based on diversity jurisdiction pursuant to 28 USC § 1332(a)(1). This court has jurisdiction based on complete diversity between the parties and alleged damages which exceed $75,000.00.

All parties have consented to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

Pursuant to FRCP 56(c), Wal-Mart had filed a Motion for Summary Judgment (docket #16). For the reasons stated below, that motion is granted.

## STANDARDS

Summary judgment may be granted if "no genuine issue" exists regarding any material fact and "the moving party is entitled to judgment as a matter of law." FRCP 56(c). The moving party must show an absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 US 317, 323 (1986). Once the moving party does so, the nonmoving party must "go beyond the pleadings" and designate specific facts showing a "genuine issue for trial." *Id* at 324, citing FRCP 56(e). The court must "not weigh the evidence or determine the truth of the matter, but only determine[] whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F3d 1047, 1054 (9th Cir 1999) (citation omitted). A "'*scintilla* of evidence,' or evidence that is 'merely colorable' or 'not significantly probative,'" does not present a genuine issue of material fact. *United Steelworkers of Am. v. Phelps Dodge Corp.*, 865 F2d 1539, 1542 (9th Cir 1989) (citation omitted). The substantive law governing a claim or defense determines whether a fact is material. *Addisu v. Fred Meyer, Inc.*, 198 F3d 1130, 1134 (9th Cir 2000) (citation omitted). The court must view the inferences drawn from the facts "in the light most favorable to the non-moving party." *Bravo v. City of Santa Maria*, 665 F3d 1076, 1083 (9th Cir 2011) (citations omitted).

Oregon law applies to the substantive law of negligence based on diversity jurisdiction. *See Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F3d 960, 973 (9th Cir 2013) (applying Alaskan law to the question of attorney's fees because the state law is substantive).

### UNDISPUTED FACTS

During the evening of August 29, 2011, Cardenas was shopping at the Wood Village Wal-Mart Supercenter Store #2927 with her adult daughter, Susana Cardenas ("Susana"), and her granddaughters, Noeli, Kimberly, and Daisy.  Notice of Removal, Ex. B ("Complaint"), ¶ 3; Cardenas Depo., pp. 9, 11.[1]  Wal-Mart controls the daily operations of the Wood Village store. *Id*, ¶ 4.

The Wood Village has two customer entrances.  Susana Depo., p. 11.  Cardenas and her family went in the right-hand entrance, walked down the aisle, and turned left past some self-checkout registers.  *Id*; Cardenas Depo., p. 14.  Cardenas was wearing platform flip-flops. Cardenas Depo., p. 22.  Within approximately five minutes of entering the store, she slipped in a puddle of liquid on the store floor and fell.  Complaint, ¶ 7; Susana Depo., p. 10.  At the time of the accident, Susana was pushing a cart approximately five feet in front of Cardenas with Noeli at her side.  Cardenas Depo., p. 12; Susana Depo., pp. 13-14.  Kimberly and Daisy were walking on either side of Cardenas.  Cardenas Depo., p. 14; Susana Depo., p. 14.  Neither Cardenas nor Susana saw the puddle before the fall.  Cardenas Depo., p. 38.  After the fall, Susana noticed the puddle was liquid.  Susana Depo., p. 15.  The liquid was clear, appeared to be "water, Sprite, or something," "more or less roundish," and three or four inches in diameter.  *Id*, pp. 15-16.  The leg of Cardenas's tan-colored pants was wet and stained "with something like chocolate or something" from the fall.  Cardenas Depo., p. 38; Susana Depo., pp. 17, 22, 42.

Cardenas fell perpendicular to the aisle and landed on her right shoulder and neck. Cardenas Depo., pp. 21-22, 24.  Susana remembered that it was a busy time at the store.  Susana Depo., p. 10.  Lots of people gathered to help Cardenas, while Susana "requested that an

---

[1] Portions of Cardenas's and Susana's depositions are attached to the declaration of Iayesha Smith (docket #18) and Plaintiff's Response to Defendant's Motion for Summary Judgment (docket #20).  Citations to depositions are to the page numbers of the deposition transcript.

ambulance be called." *Id*, p. 15; Cardenas Depo., p. 37.  Cardenas was turned on her front, and Susana bundled clothing under her face to support her neck until the ambulance arrived.  Susana Depo., pp. 28-29; Cardenas Depo., p. 24.

As a result of the fall, Cardenas "sustained a twisting, tearing, and wrenching of the soft tissue and muscles in her back, neck, and shoulder."  Complaint, ¶ 11.  She also endured a "full thickness tear of the distal supraspinatus tendon with approximately 2 cm tendon retraction, mild joint capsule edema, mild to moderate impingement on the supraspinatus, tendon, large glenohumeral joint effusion, moderate subacromial/subdeltoid bursal edema, and sucoracoid bursal edema." *Id.*  The fall and subsequent injuries caused Cardenas to suffer pain, inconvenience, and interference with her normal and usual activities in an amount not to exceed $100,000.00.  *Id.*  Cardenas also suffered economic damages from medical bills and future medical expenses totaling $35,695.58.  *Id*, ¶ 12.

## DISCUSSION

Wal-Mart seeks summary judgment on the basis that Cardenas has submitted no evidence that Wal-Mart breached its duty of care to an invitee.  Under Oregon law, a plaintiff who slips and falls on a foreign substance must prove:

> (1) that the substance was placed there by the occupant; *or* (2) that the occupant knew that the substance was there and failed to use reasonable diligence to remove it *or* (3) that the foreign substance had been there for so long that the occupant should, in the exercise of reasonable diligence, have discovered and removed it.

*Van Den Bron v. Fred Meyer, Inc.*, 86 Or App 329, 331, 738 P2d 1011, 1012 (1987) (citations omitted).

Negligence is ordinarily a question of fact to be decided by the jury.  However "in order for there to be a triable issue as to whether defendant's conduct did or did not meet the

appropriate standard of care there must be evidence of defendant's conduct before it can be

compared with the relevant standard of care." *Dubry v. Safeway Stores, Inc.*, 70 Or App 183,

186-87, 689 P2d 319, 321 (1984).

Cardenas concedes that she has no evidence to prove that Wal-Mart violated the first or

second prongs of the invitee standard of care.  However, she contends that Wal-Mart was

negligent under the third prong because, in the exercise of reasonable care, it should have known

that the spill was there and removed it.  Under this prong, "a jury question is presented when

plaintiff has shown the nature of the hazard and that it existed for a period of time sufficient that

appropriate action might have been taken." *Hall v. State*, 290 Or 19, 25-26, 619 P2d 256, 260

(1980) (citations omitted).  Thus, the only issue in this case is whether the liquid spill was on the

floor a sufficient amount of time that Wal-Mart should have discovered and removed it before

Cardenas fell.

I.      **Evidentiary Objections**

Cardenas relies on the following evidence to create a factual issue over the length of time

the puddle was on the floor:  (1) video surveillance footage of the area near the incident; (2) the

Wal-Mart Safety Resource Manual ("Manual"); (2) photographs of the spill; and (3) a hand-

drawn diagram of the location of the accident.  Cardenas references the video footage, but

without submitting it as evidence, and provides no authentication for the other evidence.

"A trial court can only consider admissible evidence in ruling on a motion for summary

judgment." *Orr v. Bank of Am., NT & SA*, 285 F3d 764, 773 (9th Cir 2002) (citations omitted);

*see* FRCP 56(c)(4) ("[a]n affidavit or declaration used to support or oppose a motion must be

made on personal knowledge, set out facts that would be admissible in evidence, and show that

the affiant or declarant is competent to testify on the matter stated.").  "To survive summary

judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of [FRCP] 56." *Block v. City of L.A.*, 253 F3d 410, 418-19 (9th Cir 2001) (citation omitted).

Nonetheless, at the hearing, Wal-Mart conceded that evidence submitted by Cardenas was provided in response to discovery requests, is admissible and may be considered by the court, while retaining its objection based on the lack of any supporting evidence to precisely when the photographs were taken [2] and exactly what the surveillance video depicts.

## II. Length of Presence of the Spill

Since *Pavlik v. Albertson's Inc.*, 253 Or 370, 454 P2d 852 (1969), the Oregon Supreme Court has decided numerous cases holding that in the absence of proof from which a jury can draw an inference of how long the substance was on the floor, there is no basis to find defendant negligent. *Weiskopf v. Safeway Stores, Inc.*, 271 Or 630, 632, 533 P2d 347, 348 (1975) (collecting cases). In other words, "there must be *some* evidence of how long the offending material was on the floor." *Dubry*, 70 Or App at 188, 689 P2d at 322 (emphasis added).

Cardenas argues that a jury could draw the inference that the puddle was on the floor long enough for Wal-Mart to discover and remove it based on the accident taking place near a checkout station, Wal-Mart's policy that employees complete safety sweeps on a regular basis, and the scuff marks and debris on the floor at the time of the accident. The court disagrees. The evidence provides no information about how long the foreign substance was on the floor before Cardenas slipped and fell.

Because the video surveillance footage shows Wal-Mart employees in the area of the fall, Cardenas argues that, in the exercise of reasonable care, they should have discovered the spill.

---

[2] At the hearing, Cardenas' counsel represented that one photograph depicts Cardenas' leg while lying on the floor shortly after the accident, but did not submit supporting evidence.

Cardenas observed a video camera "further up ahead" of where she slipped. Cardenas Depo., p. 15. As explained at the hearing, this camera does not videotape the area where Cardenas fell, but only shows employees *near* that area for about an hour before and after the fall.

That employees were present near the area does nothing to prove *when* the puddle appeared on the floor. In the extreme example, even employees walking near the area minutes before the incident would not discover a spill that occurred after they left the area but before the fall. It is just as probable that the substance spilled on the floor immediately prior to Cardenas's fall as at any earlier time. It is insufficient evidence "that there are equal probabilities that the material was there for two seconds or two hours. The factfinder cannot be allowed to substitute conjecture or speculation for reasonable inferences based on evidence." *Dubry*, 70 Or App at 188, 689 P2d at 322. Without evidence eliminating the chance that the spill immediately preceded the accident, the video surveillance footage is irrelevant.

Cardenas offers a related argument based on the employees' training and responsibility to remove any tripping and slipping hazards pursuant to Wal-Mart's Manual. The Manual provides guidelines to "help prevent slips, trips, and falls within the facility." Manual, p. 1. Those guidelines instruct employees to "[c]lean up spills, debris, and slip and trip hazards immediately" and to "[c]omplete safety sweeps on a regular basis to help keep the salesfloor free of slip and trip hazards." *Id.* The Manual does not specify how regular inspections must occur or other guidelines as to how often employees are expected to clean the aisles. But again, the regularity of maintenance to the area is irrelevant to determining how long the substance was on the floor. *See Diller v. Safeway Stores, Inc.*, 274 Or 735, 738, 548 P2d 1304, 1306 (1976) ("the fact that the store's log book showed that the floor had not been swept for over an hour before the accident does not raise an inference that defendant should have known the water or ice was there

and should have removed it in the exercise of reasonable diligence"); *see also Pavlik*, 253 Or at 374-75, 454 P2d at 855 ("An employee could have . . . swept the floor two minutes earlier and it would have been to no avail had the leaf been deposited on the floor subsequent thereto."). Unless the record shows, which it does not, that the spill preexisted inspection, the evidence has no bearing on whether it was reasonable for the inspecting employee to discover the spill.

Cardenas argues that a nearby cashier about 10-15' away could see the area around the spill and had a duty to discover and, as required by the Manual, immediately clean up the spill before Cardenas fell. However, Cardenas has offered no evidence that the cashier had an unimpeded direct line of sight to that area. Even assuming that the cashier could see that area at all times, there is no evidence as to what the cashier was doing or whether he or she was even present, prior to Cardenas' fall, such that he or she should have seen the spill first. Furthermore, since Susana walked through that area just before Cardenas and saw nothing, it is equally plausible for a cashier to have seen nothing. The more reasonable inference is that the spill happened immediately before Cardenas fell, such that the cashier would have had no opportunity to discover and remove it first.

Finally, Cardenas relies on the condition of the floor surrounding the puddle. The photographs show a piece of white debris and a solid, black scuff mark, 0.5 to 1.0 inch thick, on the floor by the liquid spill. Response, Ex. 3.

Courts have considered various evidence of the condition of the foreign substance at the time of the fall as sufficient to prove the length of time the substance preexisted the incident. Generally, evidence that the area was "well-marked" is insufficient to create a genuine issue of fact. *See Pavlik*, 253 Or at 375, 454 P2d at 855 (court found that evidence of "well marked" foreign substance causing the fall insufficient "because the [lettuce] leaf could hardly appear

otherwise after plaintiff had stepped on it").  But evi that the substance has transformed from its normal state by the time of the accident is sufficient.  *See, e.g.*, *Audas v. Montgomery Ward, Inc.*, 79 Or App 718, 720, 719 P2d 1334, 1335 (1986) (substance that was usually gooey had a glaze over the top and was crusted over at the time of the fall); *Kurtz v. Wal-Mart Stores, Inc.*, 338 F Supp2d 620, 621 (D Md 2004) ("that the spill on which she slipped had begun to dry at the edge is at least some evidence from which a reasonable inference could be drawn that the liquid had been on the floor a sufficient length of time for a person under a duty of care to discover it to have done so"); *Smith v. Wal-Mart Stores, Inc.*, 6 SW3d 829, 831 (Ky 1999) (condition of blue liquid from blue slushy drink normally found in a semi-frozen state enough to create reasonable inference that it had remained on floor long enough for ice to melt); and *Foley v. F.W. Woolworth*, 293 Mass 232, 233, 199 NE 739, 740 (1936) ("consistency of vomit on a stairway, being partly dry and hard, warranted an inference that it had been on the stairway long enough to be discovered").

The evidence about the source of the liquid that caused Cardenas to slip is inconclusive. Susana conjectured that the liquid was "water, Sprite, or something."  Susana Depo., p. 15. Cardenas, on the other hand, thought the stain on her pants from the liquid came from "chocolate or something."  Cardenas Depo., p. 38.  That dark stain could easily have been caused by dirt on the floor.  Thus, there is insufficient evidence from which to reasonably infer that the substance changed form by the time Cardenas fell.

The condition of the floor around the spill is also insufficient.  The debris is unidentifiable and offers no clue to its age or origin.  Likewise, it is not clear whether the scuff mark was caused by Cardenas or someone else.  The scuff extends in a line parallel to the length of the aisle and perpendicular to the direction of Cardenas's fall.  Because Cardenas fell to her

right, presumably her feet kicked to her left and not out in front of her, the direction likely to create this mark.  Thus, she argues that the jury could reasonably infer that someone else slipped in the spill before she did, proving that it existed for some period of time before her slip and fall.  But inferring that someone other than Cardenas created the scuff mark is irrelevant to the timing of the spill.  The pictures do not show any relationship between the mark and the spill to explain whether the mark was created before or after the spill appeared and whether the spill caused someone else to slip and leave that mark.  It is just as reasonable that someone created the scuff mark when rushing to assist Cardenas after she fell.  The scuff appears one or two inches removed from the edge of the smeared liquid, such that it does not overlap with the liquid at all and could be completely unrelated.

Oregon law does not impose strict liability on invitees, such as Wal-Mart, for accidents occurring on their premises, but requires some evidence that the invitee's conduct violated the appropriate standard of care.  After a careful review of the record and consideration of the arguments at the hearing, the court concludes that the evidence submitted is not sufficient to create a material issue whether the spill had remained on the floor long enough that Wal-Mart was negligent in not having discovered and removed it.

## ORDER

For the reasons stated, the court GRANTS Wal-Mart's Motion for Summary Judgment (docket # 16).

DATED June 27, 2014.

s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge